UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIONNE CALDWELL, INDIVIDUALLY AND ) <br> ON BEHALF OF ALL OTHERS SIMILARLY ) <br> SITUATED, ) <br>     Plaintiff ) <br> v. ) <br> ) <br> WINDHAM PROFESSIONALS, INC. ) <br>     Defendant ) <br> _____ ) | CASE NUMBER: <br> 3:03CV0664(CFD) <br><br><br><br><br><br><br> DECEMBER 12 2003 |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CERTIFICATION

### PRELIMINARY STATEMENT

Plaintiff commenced this action, which seeks relief on behalf of herself and on behalf of a class under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*, by complaint dated April 11, 2003. Defendant appeared on May 2, 2003, but the parties did not conduct the mandatory pre-discovery conference until June 2, 2003. On that same date, Plaintiff served her First Set of Interrogatories. The primary purpose of the discovery requests was to determine the number of class members so that Plaintiff could establish that the numerosity requirement for class certification was satisfied.

Faced with the deadline to move for certification of the class, Plaintiff filed a motion to certify the class dated June 11, 2003. In her Supporting Memorandum of Law, Plaintiff acknowledged that she did not know the precise number of class members, as that information was "in the exclusive control of Defendant." *See* June 11, 2003 Memorandum at 6. On August 27, 2003, Windham filed a Memorandum opposing certification. In its opposition, Windham

declined to disclose the class size, but instead argued that certification should be denied because the record at the time of the motion did not establish the requirements for numerosity.[1] .

In the parties' 26f report, they requested that a scheduling conference be held, and United States Magistrate Judge William Garfinkle conducted such a conference on October 16, 2003. Pursuant to Judge Garfinkle's direction, the parties stipulated that Windham would make certain discovery disclosures by November 10, 2003 and that Plaintiff would submit her Supplemental Memorandum in support of the class certification motion by December 12, 2003. Plaintiff submits the following Supplemental Memorandum of Law in accordance with that Scheduling Order.

As will be shown below, the numerosity requirement is easily satisfied, as there are approximately 248 class members. Additionally, contrary to the arguments made by Windham in its Opposition, the remaining requirements for class certification are satisfied.

## ARGUMENT

A. **The Class Size Of 248 Is Sufficiently Numerous That Joinder Of The Class Members Would Be Impracticable.**

At the time that she filed her motion, Plaintiff had not yet discovered the precise number of class members, which number was, of course, known only to Windham. Absent specific information, Plaintiff relied upon the allegations of her complaint and the "form letter" nature of the improper demand made upon her, and she suggested that the Court either grant certification subject to the defendant's ability to move to decertify in the unlikely event that the class was not sufficiently numerous or, alternatively, to permit Plaintiff to conduct discovery on

---

[1] The lack of a record concerning numerosity was primarily Defendant's doing. Defendant sought, and received, Plaintiff's consent to an extension of time to and including July 31, 2003 to respond to these discovery requests, which motion was granted by the Court. Thereafter, on July 31, 2003, Defendant objected in the entirety to each and every interrogatory and production request. The parties subsequently resolved the objections on September 9, 2003, but Defendant did not make its disclosures until November 10, 2003.

2

the issue of numerosity before ruling on the motion. *See* 6/11/03 Memorandum at 6-7. Rather than disclose the class size in its opposition., Windham craftily argued that Plaintiff had failed to meet her burden and that certification should be denied. Now, however, Windham has made its disclosure, and the Court can determine whether numerosity has been satisfied.

The accompanying Affidavit of Sarah Poriss, which attaches Defendant's November 10, 2003 Disclosure, establishes that the class size is approximately 248, well in excess of the threshold of forty class members generally recognized by the Second Circuit, *Newberg,* and many other courts as sufficient to establish numerosity without the need to weigh other factors which can establish numerosity with respect to smaller classes. *See* 6/11/03 Memorandum at 5.

**B.    Commonality And Typicality Are Satisfied.**

    **1.    There Are Common Claims, And There Are No Significant Differences Between Plaintiff's Claims And The Other Class Members' Claims**

Consistent with its position on numerosity, Windham argues that the record did not establish the existence of other Connecticut consumers who received letters demanding collection fees in excess of 15%. That purported deficiency is resolved by Windham's disclosure.

Windham also argues that Plaintiff's claim is not typical of the class members who have suffered actual damages, because she did not herself pay the collection fee. Typicality does not, however, require that all class members suffer the same damages. Typicality is satisfied when the class members' claims make similar legal arguments to prove the defendant's liability and when the plaintiff, based upon her personal claims, can reasonably be expected to advance the interest of the absent class members. *See* Memorandum at 9. Plaintiff has already demonstrated that she will pursue the other class members' claims for actual damages, notwithstanding that she

may have only nominal actual damages herself, by having rejecting Windham's offer of full statutory damages in order to pursue the class claims.

### 2. The Plaintiff's Claim Is Not Rendered Moot By An Offer Of Judgment Filed After Her Certification Motion

Windham also argues that Plaintiff's claim was rendered moot by its tender of an offer of judgment for her statutory damages plus a reasonable attorney's fee. This offer was extended on July 31, 2003 - - some six weeks after Plaintiff filed the certification motion. Plaintiff, however, did not accept that offer of judgment and has consistently pursued her claims on behalf of the entire class. Consequently, her claim is not moot, and the offer of judgment is not a reason to deny certification.

Our Supreme Court has held that so long as the named plaintiff maintains an economic interest in class certification, "the defendant's tender and plaintiffs' refusal of maximum amount that each plaintiff could have recovered did not moot plaintiffs' claims on the merits." *Deposit Guar. Nat'l Bank, Jackson, Miss., v. Roper,* 445 U.S. 326, 329, 332-33 (1980). In further explanation, the Supreme Court declared that the named plaintiffs' "continuing individual interest in the resolution of the class certification question in their [named plaintiffs] desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails' can not be extinguished by defendants' offer to pay plaintiffs' individual claims." *Deposit Guar. Nat'l Bank, Jackson, Miss.,* 445 U.S. at 336-37. In fact, pursuant to Fed. R. Civ. P. 68, if the offer of acceptance is not accepted within 10 days, as is true in the present case, it is automatically deemed withdrawn. Consequently, neither the named plaintiff nor the

4

proposed class members were able to obtain any recourse for the wrongs committed against them and as such the Plaintiff's claims are not mooted by the Defendant's offer of judgment.[2]

Consequently, Courts applying *Roper* to these circumstances have held that "an offer of judgment made before a class is certified is not sufficient to moot the class representative's claim 'because an offer to one is not an offer of the entire relief sought by the suit . . . ,'" *Tatz v. Nanophase Technologies Corp.*, No. 01 C 8440, 2003 WL 21372471 at *5 (N.D.Ill. June 13, 2003) (discussing holding in *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999)) (quoting *Roper*).

The court in *Silva v. Nat'l Telewire Corp.*, No. Civ. 99-219-JD, 2000 WL 1480269 (D.N.H. Sept. 22, 2000), was presented with an almost identical question as the one presently before this Court. Plaintiff Silva had brought a class action under the FDCPA on behalf of a class of a class of individuals to whom the defendant had sent debt collection letters that were allegedly not in compliance with the provisions of the Act. While the Plaintiff's class certification motion was pending, the Defendant sent the plaintiff an offer of settlement offering, "the sum of $1,000 to plaintiff, Michael Silva, plus, in accordance with 15 U.S.C. § 1692k(A)(3), the costs of the action, together with reasonable attorneys' fees . . . ." *Id*. The Defendant eventually moved to compel the plaintiff to accept its offer of judgment and to dismiss the case. The Court held that "it would be inappropriate to compel the plaintiff to settle his individual

---

[2] *See Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) (stating that if the offer of judgment had been made before the denial of class certification, the outcome of the case would have been different because "an offer to one is not an offer of the *entire* relief sought by the suit . . . [a]nd obviously the rejection of an offer of less than the complete relief sought by a suit does not prove that there is no dispute between the litigants" (internal citations omitted)); *see also Littledove v. JBC & Associates, Inc.*, No. CIV.S-00-0586 WBSGGH, 2000 WL 33141223, at *2 (E.D.Cal. Dec. 22, 2000) (holding that because defendant's offer of judgment was deemed to be withdrawn, "plaintiffs have not obtained any relief for defendants' alleged violations. . . and thus still have a cognizable interest in the outcome of [the] action"); *see also Hennessey v. Connecticut Valley Fitness Centers, Inc.*, 30 Conn. L. Rptr. 499 (Conn. Super. Ct. 2001) (agreeing "with the *Roper* court in its distaste for offensive tactics for the terminating of class action suits by enticing individual plaintiffs to settle their claims at the expense of the class . . ." and holding that even if the Plaintiff's individual claim had been deemed moot, "there are class claims which survive and thus neither warrant nor permit dismissal of th[e] case").

claim against the defendant while the issue of class certification is pending. Therefore, as the plaintiff's claim was not resolved by the defendant's offer of judgment, a live controversy remains in the case, and the defendant's motion to dismiss is denied." *Id.*

The facts in *Schaake v. Risk Management Alternatives, Inc.*, 203 F.R.D. 108 (S.D.N.Y. 2001), differ slightly from those presently before the court in that the defendant in *Schaake* served the plaintiff an offer of judgment before the class certification motion was filed, however, the Court's reasoning is still applicable in the present case. Plaintiffs filed a class action complaint alleging violations of the FDCPA and in response to the complaint; defendant filed an offer of judgment. Discussing the holdings in *Liles v. American Corrective Counseling Services, Inc.*, 201 F.R.D. 452 (S.D. ID 2001), *Littledove* and *Silva*, the Court noted that

> [i]n each of these cases—as in the instant matter—the plaintiff was presented with an offer of judgment prior to a decision on the class certification issue being rendered, and the defendant therein moved both to compel its acceptance and dismiss the matter as moot. The court in each rejected the respective defendant's motion in its entirety, viewing the offer as inapplicable prior to the certification issue being decided, and each court based its decision largely upon the same principals noted above by plaintiff herein.

*Id.* at 111 (internal citations omitted).

Ultimately holding that the defendant's offer of judgment did not moot the matter, the *Schaake* Court also discussed *Ambalu v. Rosenblatt*, 194 F.R.D. 451 (E.D.N.Y. 2000), which Defendant Windham cites as authority for its claim. The Court found *Ambalu* to be distinguishable from *Shaake* because the plaintiff had yet to move for certification in the almost two years that the case had been in litigation. The Court commented that "[w]ith no certification issue before the court, and therefore no extant claims of potential absent class members to protect, the *Ambalu* court compelled the individual plaintiff to accept the full measure of individual relief sought in his case, and thereafter dismissed the matter as moot." *Id.* at 112. In the present case, there is a certification issue before the court thereby similarly distinguishing it

6

from *Ambalu*. The Court also noted "that applying *Ambalu* to class action complaints leads to an untenable result." *Id.* Similarly, applying *Ambalu*, or the other cases that Defendant cites in support of its claim, to the current case, would produce an erroneous result.

*Colbert v. Dymacol, Inc.*, 302 F.3d 155 (3d Cir. 2002), *vacated by* 305 F.3d 1256 (3d Cir.2002), *appeal dismissed en banc*, is yet another case where plaintiff filed a class action complaint alleging violations of the FDCPA and in response, defendant served the plaintiff with an offer of judgment. The court initially dismissed the action, but the order was subsequently vacated, the case reheard en banc and the appeal dismissed. The 3rd Circuit reasoned that such a finding was necessary because the offer of judgment did not offer Appellee all of the relief requested in his complaint as the offer of judgment did not provide for class relief. *See also McCabe v. Crawford & Co.*, 272 F.Supp.2d 736, 750 (N.D. Ill. 2003) (holding that the offer of judgment did not moot the plaintiff's claims because "offers of judgments are inappropriate in class action suits [and consequently] the offer must come either before class certification is sought or after class certification is denied" (internal citations omitted)).

Defendant also cites *Abrams v. Interco, Inc.*, 719 F.2d 23 (2d Cir. 1983). Although the court in *Abrams* held that there was no justiciable controversy thereby necessitating dismissal of the suit, this judgment was rendered only *after* Plaintiff's motion for class certification had been denied. This case is distinguishable, because the class certification motion has not yet been ruled upon.

The Defendant also cites *Murphy v. Equifax*, 35 F. Supp. 2d 200 (D.Conn. 1999), as authority for its proposition and while it is true that the plaintiff's claims in *Murphy* were rendered moot and the Motion to Dismiss for Lack of Subject Matter Jurisdiction of Defendant

7

granted, the case was not a class action but instead an individual action against a debt collector. This case differs drastically from *Murphy* in that it seeks relief on behalf of a class.

While an offer of judgment has been served upon Plaintiff, that offer did not satisfy her entire demand as it did not include relief for the other members of the class as is demanded in the Class Action Complaint. The court in *Schakke* cited *Murphy* when discussing the rule that "where a Rule 68 offer of judgment provides 'all that [a plaintiff can] hope to recover through the litigation,' the plaintiff's claim is moot, and the complaint must be dismissed" yet the court emphasized that "while this rule is sound as applied to *individual* plaintiffs, it does not necessarily apply when a plaintiff purports to act on behalf of a class." *Id.* at 109-10 (emphasis supplied). In *Murphy,* the defendant offered the plaintiff all she could have hoped to recover through the litigation since the offer of judgment provided for the maximum statutory damages, attorney's fees and costs—everything that she purportedly sought in her complaint. However, in the present case, Defendant did not offer Plaintiff everything she could have hoped for, it did not offer her relief for the potential Class Members.

Most courts that have dismissed class actions due to the offering of individual relief to the class representative have predicated their decision upon the failure or inability to properly and promptly pursue the class claims *E.g. Swan v. Stoneman*, 635 F.2d 97, 102n.6 (2d Cir. 1980) (after the death of the named plaintiff in the class action, the court stated that "a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified" and therefore found that it was necessary to find a substitute named plaintiff (internal citations omitted)); *see also Ambalu v. Rosenblatt*, 194 F.R.D. 451, 453 (E.D.N.Y. 2000) ("[t]hough plaintiff's arguments may have some validity after class certification, they do not apply to the present case. No class has been

certified and no motion has been made for certification. Therefore nothing prevents the defendant from attempting to facilitate settlement by making a pre-certification Rule 68 offer of judgment" (internal citations omitted)); *Tratt v. Retrieval Masters Creditors Bureau, Inc.*, 2001 WL 667602 (E.D.N.Y. 2001) (the court reaffirmed its decision in *Ambalu* where, as was the case in *Tratt*, the defendant served plaintiff with an offer of judgment before plaintiff had filed her motion for class certification); *see also Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, 258 F. Supp.2d 157, 161 (E.D.N.Y. 2003) (dismissal based on the fact that almost 20 months had passed since plaintiff filed the action and she had yet to file for certification but the Court also acknowledged that ". . . in situations where a plaintiff is presented with an offer of judgment prior to a decision on a class certification motion, some courts have expressed concern that applying *Ambalu* to class action complaints could lead to an 'untenable result' because it would encourage a race to buy off the named plaintiff early in the litigation"); *see also Jones v. CBE Group, Inc.*, 215 F.R.D. 558 (D.Minn. 2003) (Defendant served offer of judgment on Plaintiff before Plaintiff had filed his Motion for Class Certification).

    This case is distinguishable, because Plaintiff moved for class certification prior to the offer of judgment and has pressed for class relief since the initiation of this case. Her claim is not moot, and the offer of judgment does not defeat typicality.

### C. Plaintiff And Her Counsel Are Adequate

#### 1. Class Counsel Is Experienced In Class Action Litigation And Capable Of Advancing The Costs Of Representation.

Windham argues that that Plaintiff did not, in her initial submission, demonstrate that her counsel could adequately represent the interests of the class. Windham does not take issue with whether class counsel has relevant experience, but instead relies upon the lack of discussion by plaintiff regarding responsibility for costs.

The accompanying Affidavit of Daniel S. Blinn establishes that Consumer Law Group has agreed to be initially responsible for costs and that it has the necessary resources to meet those obligations; her obligation to repay expenses is contingent upon a recovery. Moreover, the case of *Weber v. Goodman*, 9 F. Supp. 2d 163 (E.D.N.Y. 1998), cited by Windham, is inapplicable, because the district court in that case based its holding upon New York's ethical rules, which require a client to be ultimately responsible for costs. By contrast, in Connecticut, an attorney may make repayment of costs and expenses of litigation contingent upon the outcome. *See* CT Rule of Professional Conduct 1.8 (e)(1). Plaintiff and her counsel have acted properly in this case.

#### 2. Plaintiff Is An Adequate Representative, And She Has Not Abdicated Her Responsibilities To Class Counsel

Windham argues that Plaintiff is not an adequate class representative, claiming that she was unable at her deposition to articulate her duties as a class representative, was not familiar with the cause of action, did not participate in the decision to bring the case as a class action, did not know how much money was being sought for herself, and believed that her duty was to merely follow her attorney's advise. The deposition citations were, however, taken out of

context, and a closer reading of the transcript reveals that Plaintiff understands the case, her claim, and her duties – and that she has abided by those duties.

### a.    The standard for adequacy.

Plaintiff, like the rest of the class members, is an individual who defaulted on a loan obligation. Few if any FDCPA class actions could be certified if a class representative were required to demonstrate a lawyer's understanding of a case's legal theory and claims. The standard for adequacy is substantially lower than that advocated by Windham. *See e.g., See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 373 (1966) (in a shareholder's derivative action, decided under the original Rule 23, plaintiff "showed . . . that she did not understand the complaint at all, that she could not explain the statements made in the complaint, that she had a very small degree of knowledge as to what the lawsuit was about, that she did not know any of the defendants by name, that she did not know the nature of their alleged misconduct . . ." yet because "the basic purpose of the Federal Rules is to administer justice through fair trials [and as such the] rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court" the Supreme Court held that the previous dismissal of the case was erroneous); *Rivera v. Fair Chevrolet Geo Partnership*, 165 F.R.D. 361, 364-65 (D.Conn. 1996) (holding that "although plaintiff's deposition demonstrates that his understanding of the case is sketchy, plaintiff is an adequate class representative"); *Klein v. A.G. Becker Paribas Incorporated*, 109 F.R.D. 646, 651-52 (S.D.N.Y. 1986) (holding that the named plaintiff's unfamiliarity with the facts and course of the litigation did not preclude him from remaining a class representative given that "the recent trend in [the] district is to assess the adequacy of the representative's attorney rather than the personal qualification of the named plaintiff"); 1 Alba

Conte & Herbert Newberg, *Newberg on Class Actions* § 3.34 (4th ed. 2002) ("most courts have followed the *Surowitz* rationale in rejecting any challenge to adequacy for class actions under amended Rule 23 based on ignorance of the facts or theories of liability"). *See also Kamen v. Kemper Financial Services, Inc.*, 908 F.2d 1338, 1349 (7th Cir. 1990), rev'd on other grounds, 500 U.S. 90 (1991) (finding that a named plaintiff, who was deemed to have been found by counsel in order "to wage the litigation," knew little about her case and had given counsel "free reign" but was nevertheless a sufficient class representative due to the experience of her class counsel); *Lewis v. Curtis*, 671 F.2d 779, 789 (3rd Cir. 1982) (holding that "[t]he adequacy-of-representation test is not concerned whether plaintiff personally derived the information pleaded in the complaint or whether he will personally be able to assist his counsel" and therefore the fact that the named plaintiff "displayed a complete ignorance of facts concerning the transaction that he was challenging," was irrelevant; *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 353 (S.D.Ga. 1996) (holding that "many courts have begun to hold that the knowledge of the class representative is of minimal importance in highly complex matters such as the case at hand" and consequently found that the proposed named plaintiffs were adequate national class representatives); *In re Catfish Antitrust Litigation*, 826 F.Supp. 1019, 1037 (N.D.Miss. 1993) (responding to defendant's apparent assertion that "the class representatives [were] 'in the dark' about the scope and objectives of [the] litigation and [were] mere pawns in the hands of antitrust counsel," the Court stated that "[a]n antitrust litigant is not expected to appreciate the finer points of the Sherman Act, Clayton Act, or the Federal Rules of Civil Procedure governing class action certification" and consequently found the class representatives to be adequate). *But cf. Darvin v. International Harvester Co.*, 610 F.Supp. 255, 256 (S.D.N.Y.1985) (Court refused to certify a class based on the inadequacy of the class representative who proffered countless inconsistent

statements during his deposition and who had "extremely limited or nonexistent" knowledge of the case); *Greenspan v. Brassler,* 78 F.R.D. 130, 133-34 (S.D.N.Y.1978) (Court held that the proposed named plaintiffs were not adequate class representatives due to their "alarming unfamiliarity with the suit" as they had not met with their attorney until after the groundwork for the suit had been laid, and were only able to name one out of the four defendants being sued).

      **b.**     **Plaintiff's understands the case and her duties as a class representative, and she has abided by those duties.**

Plaintiff, at her deposition, displayed an understanding of the case and her duties as class representative that was substantially more sophisticated than Windham suggests. For example, Plaintiff understands the importance that her claim be typical of the class members and that she not have any conflict with the other class members:

> Q: Paragraph 2 of this affidavit says, "I have no interest adverse to those of the class members." Do you recall signing a statement that said that?
>
> A: Yes.
>
> Q: Can you tell me what that means?
>
> A: That I'm representing the class, and we all have basically the same claim.

Tr. 29-30.[3] During the questioning immediately following, Plaintiff displayed her involvement in the preparation of her affidavit establishing the lack of conflict with class members. She also demonstrated her understanding of Windham's illegal conduct:

> Q: Was this simply presented to you for you to sign?
>
> A: I read it over before I signed it.
>
> Q: You read it over. But prior to your reading it, have you had any discussions with your lawyer about it?
>
> A: Yeah.

---

[3] Plaintiff's deposition transcript is attached to Windham's opposition brief.

13

> Q: And what thought, if any, did you give to whether or not you had interests adverse to those of the class
>
> [objection by Mr. Blinn}
>
> A: We all have the same claim with Windham Professionals.
>
> Q: What is the nature of that claim?
>
> A: Windham Professionals tried to charge more than 15 percent of the - - in collection fees.

Tr. 30-31.

Although Windham's attorney certainly tried to get Plaintiff to say that she had abdicated decision-making responsibility to her attorneys, the entirety of her deposition testimony reveals that she understands her duties as a class representative and that, although she is properly guided by her attorneys' advice, she makes the decisions:

> Q: And what does that mean? What are you required to do? Do you understand what you are required to do?
>
> A: Represent the others that this has happened to.
>
> Q: Does that mean basically following your attorneys' advice?
>
> A: Right.
>
> Q: So you do whatever your attorneys tell you to do?
>
> A: Not whatever. I mean, within reason.

Tr. 37-38.

Similarly, although Defendant did testify that her attorneys made the decision to bring the case as a class action, she later clarified what she meant by that testimony:

> Q: And before you testified that the decision to bring the case as a class action was made by your attorneys?
>
> A: Yes.
>
> Q: Did you participate in that decision?

14

> A: Yes.
>
> Q: And did you agree with that decision?
>
> A: Yes.
>
> Q: If you disagreed with that decision, would this case have gone forward as a class action?
>
> A: No.

Tr. 46-47. It is evident that, although Plaintiff's attorneys may have recommended a class action to the Plaintiff, she reserved ultimate decision authority to herself. Windham should not be surprised that a litigant followed her legal counsel's recommendation, and there is nothing improper in her doing so.

Plaintiff similarly demonstrated the importance of a class representative's role in responding to settlement proposals. She also demonstrated her commitment to pursuing the class claims, even if it meant foregoing compensation for herself:

> Q: If a settlement offer was made to settle the class' claim, who would decide to accept or reject it.
>
> A: If a settlement - -
>
> Q: Offer were made to the class - -
>
> A: To the class.
>
> Q: -- and I sent that to your attorney, who would decide to accept it or reject it?
>
> A: We would.
>
> Q: Who is "we"?
>
> A: My attorney and I.
>
> Q: If your attorney said to accept it, would you accept it?
>
> A: Depending on what it is, what the settlement is.
>
> Q: If a settlement offer was made to settle your individual claim, who would decide to accept it or reject it?
>
> A: My attorney and I.
>
> Q: And if your attorney recommended that you reject it, would you reject it?
>
> A: Yes.

15

| | |
|---|---|
| Q: | And with the class, if your attorney recommended that you reject the class' settlement, would you reject it? |

[objection by Mr. Blinn]

| | |
|---|---|
| A: | I don't know. |
| Q: | but you would reject a settlement offer if your attorney told you to reject an individual settlement offer. |
| A: | Yes. |
| Q: | Are you arware of whether there has been any offer made to settle your individual claim? |
| A: | Yes. |
| Q: | Can you tell me what the offer was? |
| A: | $1,000. |

Tr. 40-42. In her testimony, the Plaintiff demonstrated an understanding that she must not blindly accept her attorney's advice but must instead independently scrutinize a settlement offer.

Perhaps the most striking testimony to Plaintiff's adequacy as a representative was her refusal to accept Windham's offer. She agreed to forego the maximum recovery to which she could recover in the suit so that she could continue to press the class claims. Having failed in its effort to "bribe" her, Windham now argues that the class needs to be protected from Plaintiff's inadequate representation. The Court should give significant weight to Plaintiff's refusal of that offer in considering whether this Plaintiff, represented by her attorneys, is capable of handling this litigation for the benefit of the class members. Plaintiff is not only an adequate representative, she is ideal, and Windham's cannot credibly argue that certification should be denied because of the need to protect the class from improper representation by the Plaintiff and her attorneys.

**D.  A Class Action Is Superior To Other Available Methods To Resolve The Controversy, Because Class Members Are Entitled To Actual Damages In Addition To Statutory Damages And Because Class Members Are Unaware That Windham's Charges Are Illegal, And Because No Class Member Has Ever Independently Asserted This Claim.**

Windham argues at length in its Opposition that the superiority requirement for class certification is not met because of the cap upon class members' statutory damages claim. Plaintiff acknowledges that the total statutory damages recoverable under the FDCPA in a class action is potentially less than the theoretical recovery available if every class member were to bring an individual action.[4]

Windham argues that, if the potential class recovery is less than this theoretical recovery, then a class action is inferior to individual actions. This argument ignores the availability of actual damages to class members who have paid Windham illegal collection fees. The suit seeks to recover the illegally collected fees as actual damages in addition to statutory damages.

More fundamentally, Windham's argument ignores the reality that this theoretical recovery of $1,000 multiplied by the number of class members is a myth. The class members do not know that they have claims and will not assert them. The class consists of individuals who have defaulted on loan obligations. They are not, as a group, sophisticated individuals. It is unlikely that they are aware that, in Connecticut, collection costs are statutory capped at 15% and that Windham's letters demanding costs in excess of that amount violate FDCPA. Even if they did know, it is unlikely that they have the wherewithal or access to counsel to assert them.

Indeed, Windham has acknowledged in response to a supplemental interrogatory that none of the individuals who fall within the class definition have ever asserted an FDCPA claim

---

[4] Because there are fewer than 500 class members, the $500,000 component of the cap will not be a limitation. The only limitation would therefore be 1% of Windham's net worth.

against Windham. The apparent alternative to a class action is therefore no recovery of any type for the class members and no repercussions to Windham for its illegal conduct save the payment of $1,000 to Plaintiff on her individual claim.[5] It is not surprising that Windham prefers that result.

Because class members have not previously brought individual actions, and absent any evidence that those circumstances might change in the future, certification is "necessary" under the meaning of cases such as *Galvan*, *Ruiz*, and *Bridgeport Guardians*, cited by Windham in its opposition, because the class members would not receive any benefit if certification is denied, and Windham would improperly profit from its illegal collection fees.

Windham attempts to mask its true motive of avoiding any significant repercussions for its illegal conduct by characterizing this suit as just another example of greedy lawyering, going so far as to claim that the motivation behind this suit is the potential of higher fees in a class action.[6] This scurrilous and unsubstantiated claim is inconsistent with class counsel's background. The vast majority of claims brought by Consumer Law Group are brought on an individual basis and not on behalf of a class. Indeed, Plaintiff's law firm has asserted approximately 132 fair debt collection claims on behalf of clients, but this is the only one that has ever been brought on behalf of a class. *See* Affidavit of Daniel S. Blinn.

This suit was brought on a class-wide basis not because of the availability of greater attorney's fees, but because Windham has engaged in a common practice of charging illegal collection fees and has caused actual harm to Connecticut consumers. To her credit, the Plaintiff

---

[5] As argued in the 6/11/03 Memorandum, a class action would also have a significant deterrent effect against further violations of the FDCPA by Windham, making this action a useful complement to governmental regulatory enforcement efforts.

[6] Examples of such arguments include Windham's assertion that "[t]he motive of plaintiff's attorney to generate fees should not justify class certification", p. 14, and its claim that "the plaintiff's arguments are generic, reflecting class counsel's predilection for the enhanced opportunites for fee generation in a class action – in other words, class counsel has never met a class action that was not superior.",p.16.

has agreed to potentially subvert her own interests and pursue relief on behalf of all who are effected. A class action is not only the superior means to address Windham's conduct, it is the only means.

## CONCLUSION

For all the foregoing reasons, and for those stated in the June 11, 2003 Memorandum, Plaintiff's Motion to Certify the Class should be granted.

> PLAINTIFF, Dionne Caldwell, on behalf of herself
> and all others similarly situated
>
> By: _____
> Daniel S. Blinn       ct02188
> dblinn@consumerlawgroup.com
> Consumer Law Group, LLC
> P. O. Box 1039   2138 Silas Deane Highway
> Rocky Hill, CT 06067-9997
> Tel. (860) 571-0408   Fax. (860) 571-7457

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion for Certification of the Class with Memorandum in Support of Motion for Class Certification attached was mailed, via first-class mail, postage prepaid, this 12th day of December, 2003, to the following:

Attorney Jonathan D. Elliot
Kleban & Samor, P.C.
2425 Post Road   P.O. Box 763
Southport, CT 06490

_____
Daniel S. Blinn