**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **DIONNE CALDWELL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, Plaintiff** | ) | **CASE NUMBER: 3-03-CV-664 (CFD)** |
| **v.** | ) | **MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES AND COSTS, AND AWARD TO REPRESENTATIVE PLAINTIFF** |
| **WINDHAM PROFESSIONALS, INC. Defendant** | ) | **NOVEMBER 16, 2005** |

## I. INTRODUCTION

By Order dated August 10, 2005, this Court, by the Honorable Judge Christopher F. Droney, granted preliminary approval to the settlement of this consumer class action. Plaintiff submits this Memorandum in support of the final approval of the settlement, including the award of attorney's fees and a class representative fee.

## II. PROCEDURAL HISTORY

This lawsuit arises out of Windham Professionals, Inc. ("Windham")'s conduct in collecting debts from Connecticut consumers. Plaintiff has alleged that Windham, a consumer collection

agency, sought fees for amounts on which it sought to collect in excess of those allowed by law. Specifically, Plaintiff claimed that Windham sent her and the class members letters seeking to collect fees in excess of 15% of the debt, the maximum allowable quantum permitted under state law, Conn. Gen. Stat. §36a-805(13). Windham thereby violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 *et seq.*

On April 11, 2003, Dionne Caldwell filed a complaint on behalf of herself and similarly-situated Connecticut consumer debtors against Windham. The Class was defined as comprising of individuals residing in Connecticut who have been subjected to the collection attempts on account of a consumer obligation, other than a student loan, by the Defendant, who sought fees for collection in an amount in excess of 15% of the amount sought to be collected. In her Amended Complaint dated August 19, 2004, Plaintiff refined her class definition to include only those consumers who received collection notices that were sent between April 14, 2003, and April 14, 2004.

Windham filed an Answer to the Plaintiff's Complaint on July 31, 2003, denying the material allegations of the Complaint and propounding several affirmative defenses.

A settlement conference was held on May 13, 2004 before Special Master Raymond Green and, as a result of the conference, the parties reached a settlement. The parties thereafter submitted their *Joint Motion for Preliminary Approval of the Settlement Agreement, Conditional Certification of Settlement Class, and Approval of Form and Manner of Notice* to this Court on August 19, 2004. This motion was granted by the Honorable Christopher F. Droney by his Order dated August 10, 2005.

On or about September 22, 2005, Windham submitted an Affidavit to this Court, certifying that it had mailed the *Notice of Pendency of Class Action, Proposed Settlement, and Hearing* to 179 Class Members on or before September 10, 2005. No Class Members objected to the settlement, and no Class Members have opted out of the settlement. The parties now seek final approval of the settlement, which they believe is fair and reasonable and which avoids the ongoing expense and uncertainties of further litigation, trial and possible appeal. Plaintiff files this brief in support.

## III. LEGAL ISSUES

### a. Framework of the Settlement

Class counsel have negotiated what they believe is an equitable, informed, and very favorable settlement agreement. The consensus was achieved after serious and collaborative negotiations, and under the auspices of Special Master Raymond Green. Under the proposal, the Settling Parties have agreed to a settlement that will provide reimburse each class member for the portion of all collection fees paid that exceeded 15% of the debt. Additionally, it will reduce the collection fees sought against the remaining class members to the 15% limit. It will also make a $31.25 cash payment to each class member who can be located. The awards for class members who cannot be located will revert to Windham. The total benefit that the Class Members receive from this proposed settlement will *not* be subject to reduction by any administrative fees or attorneys' fees and costs, because, as additional consideration, Windham has agreed to make an payment of reasonable attorneys' fees and a reasonable class representative fee in amounts to be established by the Court after a hearing and not to exceed

$27,000 for attorney's fees and $1,500 for a class representative fee, and to pay costs for notice as set forth in the *Settlement Agreement*.

**b. <u>Administration and Class Notice</u>**

Under the Order granting preliminary approval to the proposed settlement, counsel for Defendant Windham mailed copies of the *Notices of Pendency of Class Action, Proposed Settlement, and Hearing* to 179 individuals identified as Class Members. Defendant's *Affidavit of Brian Chapman* avers that these documents were mailed on September 9, 2005.

The approved notice and claim form informed class members that they had a right to exclude themselves from the class or object via written request postmarked up until November 10, 2005. The notice also advised that plaintiff would be applying for an award of counsel fees and costs, and an award to the representative plaintiff.

**c. <u>Factors Bearing on Final Approval</u>**

The law "favors settlement of class actions" just as in other cases. *In Re Toys R Us Antitrust Litigation*, 191 F.R.D. 347, 350 (E.D. N.Y. 2000). *See also In re Gulf Oil/Cities Service Tender Offer Litigation*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992) ("the law favors settlements of class actions no less than of other cases") (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)). In this Circuit, in fact, there exists a "strong judicial policy in favor of settlements, *particularly in the class action context*." *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (emphasis added).

A court may approve a class action settlement if it is "fair, reasonable, and adequate," FRCP 23(e)(1)(c), and "not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d

96, 116 (2d Cir. 2005), citing *Joel A v. Giuliami,* 218 F.3d 132, 138 (2d Cir. 2000). A settlement's fairness is gauged by looking at both the settlement's substantive terms and the negotiating process leading to settlement. *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

At the outset, "a strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's length," *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (Baer, J.). Of course, "the Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). In assessing the quality of the settlement, the Court must consider the nine factors enunciated in *Grinnell,* namely:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*See id. at 263.*

**i. <u>The Complexity, Expense, and Likely Duration of the Litigation</u>**

Plaintiff submits that the complexity, expense and likely duration of the litigation weigh in favor of final approval. Although not oppressive in its technical complexity, this case (already more than two years old) presents questions of law and fact that would require considerable

effort, time, and expense to litigate.

Factually, Plaintiff alleged that Defendant's debt collection practices violated the FDCPA by falsely representing the amount of the debt owed and by seeking to collect collection fees over the ceiling established by state law. Furthermore, in its *Answer* to Plaintiff's *Complaint*, Defendant raised several affirmative defenses, including that, if in fact Defendant committed any FDCPA violations, they were unintentionally made resulting from bona fide error notwithstanding procedures reasonably adopted to avoid such error. Although, of course, the defenses would be the Defendant's burden to prove, they would necessarily complicate the lawsuit and demand substantially more attention, time, and resources from both the parties and the Court.

Additionally, Defendant asserted that the state statute governing permissible collection fees, Conn. Gen. Stat. §36a-805, was unconstitutional. Defendant also invoked the bona fide error defense, 15 U.S.C. §1692k. Litigation of all of these various issues would consume substantial litigant and judicial resources. *See In Re: General Motors Pick-Up Truck Litigation,* 55 F.3d 768, 812 (3d Cir. 1995) (defendant's opposition and number of significant legal issues are elements favoring settlement, which avoids delay and offer immediate payment).

**ii. <u>Reaction of the Class to the Settlement</u>**

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41, at 108 (4th ed. 2002). *See also In re Global Crossing Sec. & ERISA Litig.*, 225

F.R.D. 436 at 457 (noting that "extremely low numbers of objectors and opt-outs strongly support settlement approval"); *Marisol A. v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999) (observing that few comments received from a class of 100,000 constituted "evidence of the Settlement Agreements' fairness, reasonableness, and adequacy"); *In re Warner Communications Secs. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985) (noting small number of objections and opt-outs in approving settlement).

In this case, the reaction of the Class to the settlement has been invariably positive. In fact, no opt-outs have been received from any Class Member. Likewise, there have been no objections to the proposed settlement. The complete absence of both objections and opt-outs indicates an unassailably favorable reaction, and overwhelming approval, from the Class.

**iii. The Stage of Proceedings and the Amount of Discovery Completed**

This component of the *Grinnell* analysis ensures that counsel has negotiated the settlement agreement on an informed basis, and that the parties have agreed to settle with a thorough understanding of the merits of their cases. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2nd Cir. 2005); *see also In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001). To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery. *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982). In fact, courts in this Circuit have approved settlement agreements though no formal discovery has been undertaken. *See, e.g., In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), aff'd by *D'Amato v. Deutsche Bank*, 236 F.3d 78 (3rd Cir. 2001). "Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the

Court to intelligently make ... an appraisal of the Settlement." *In re Austrian and German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982)).

Since the commencement of this lawsuit more than two and a half years ago, the parties engaged in both formal and informal discovery. Interrogatories and Requests for Production were served and answered by each party. Investigations were conducted on both sides. The proceedings weathered requests for supplemental discovery information, as well as objections. And, the Defendant deposed the Class Representative. Clearly, both parties and their counsel were cognizant of the strengths and weaknesses of their- and their opponents'- cases, and the Settlement Agreement reflects their subsequent conscientious negotiations.

**iv. Risks of Class Prevailing (Establishing Liability, Establishing Damages, Maintaining the Class through Trial)**

Trying any action on its merits imposes an attendant risk that the litigation may not be successful. Recovery is never completely assured, and this case is no different. Though Class Counsel made what they believed were near-irrefutable allegations of Defendant's violations of the FDCPA, the Defendant, nevertheless, vigorously denied the assertions and maintained adherence to the FDCPA. Further, Defendant raised four affirmative defenses to Plaintiff's allegations. Based on this, and on the level of energy and resources Defendant devoted to contesting the class certification, it is not unreasonable to assume that Defendant would have mounted a robust defense. The plaintiffs, of course, would have the burden of establishing, by a preponderance of the evidence, Defendant's FDCPA breaches and resultant damages incurred by

the class members. All of these factors indicate that establishing liability and damages would have been an endeavor fraught with risk, no matter how strong Class Counsel believed the case to be.

**v. <u>The Ability of Defendant to Withstand a Greater Judgment</u>**

The *Grinnell* inquiry takes a holistic approach to the Court's evaluation of a proposed settlement agreement. To adjudge the instrument fair, "not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)). The fact that the Defendant could possibly endure a more withering judgment is largely irrelevant, given that Class Counsel deem the terms of the settlement both fair and favorable to recompense the Class for their injuries (and no Class Members have objected or opted out).

**vi. <u>The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation</u>**

A "range of reasonableness" applies to settlements, which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion..." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). Although it is the opinion of the class counsel that the case is strong, trials are fraught with uncertainty and could result in awards substantially inferior to the negotiated settlement terms. *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, *16, 2005 WL

2757792, *6 (S.D.N.Y., Oct. 24, 2005) (partially basing approval of a class action settlement "due to the risk that protracted litigation may be fruitless").

The terms of the settlement are not only fair and reasonable, but quite favorable to the Class Members. Every Class Member who paid the collection fee sought by Defendant and thus suffered actual damages, will be reimbursed the amount of the fee that exceeded 15%. Class Members who were assessed, but have not paid, a fee will see the fee reduced by the amount it had exceeded 15%. The Class Members are therefore receiving the full measure of their actual damages.

Additionally, every located Class Member will receive $31.25. Statutory damage in FDCPA class actions are limited to 1% of the net worth of the defendant or $500,000, whichever is less. Defendant disclosed in discovery that its net worth was approximately $2,000,000, and the most that the entire class could recover in this action for statutory damages is therefore approximately $20,000. That would translate to approximately $81 per class member. The class members are receiving a significant percentage of the maximum recoverable under that claim.

**d. <u>Attorneys' Fees and Costs</u>**

Plaintiff seeks an award of $27,000 to compensate counsel for their representation of the Class. Pursuant to the FDCPA, a successful FDCPA litigant can recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Courts in this Circuit have acknowledged that consumers successfully bringing an action under the Fair Debt Collection Practices Act are entitled to attorney's fees. See, e.g., *Pipiles v. Credit*

*Bureau of Lockport*, 886 F.2d 22, 28 (2d Cir. 1989), *Emanuel v. American Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989).

“In calculating attorney's fees awarded under the FDCPA, ‘courts typically use a 'lodestar' figure as a starting point.’” *Dowling v. Kucker Kraus & Bruh, LLP*, 2005 U.S. Dist. LEXIS 11000, *19, 2005 WL 1337442, *6 (S.D.N.Y. 2005) (quoting *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 412 (S.D.N.Y. 2003)). The lodestar figure is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for each attorney or paralegal involved. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). The lodestar figure should be in line with the rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation. *Id*; *see also Savino v. Computer Credit, Inc.*, 71 F.Supp.2d 173, 175 (E.D.N.Y. 1999) ("It is well established that the proper method for determining the amount of a prevailing party's attorney's fee award [in an FDCPA action] is the 'lodestar' method, in which an initial estimate of fees is obtained by multiplying the number of hours reasonably expended by counsel on the litigation by a reasonable hourly rate.").

"There is ... a strong presumption that the lodestar figure represents a reasonable fee." *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 79 (2d Cir. 2005) (citations and internal quotation marks omitted). *See also Evanauskas v. Strumpf*, 2001 WL 777477 (D.Conn., June 27, 2001) (FDCPA case discussing lodestar analysis as yielding reasonable attorney fees), *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1998) (“The starting point for the determination of a reasonable fee is the calculation of the lodestar amount.”) (citing *Hensley v. Eckerhart*, 461 U.S.

424, 433 (1983).

In the extant case, the sum sought for fees was negotiated independently of monies to be recovered by Class Members, and as such does not diminish the benefits to participating Members. The attached Affidavit of Daniel S. Blinn shows that the lodestar amount of fees approximately $30,000. Thus, the negotiated fee is far from the type of "unwarranted windfall," *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 49 (2d Cir. 2000) (internal citations omitted), that justice abhors.

**e. <u>Award to Representative Plaintiff</u>**

Customarily, class representatives are paid an additional amount to compensate them for the additional time that they have spent in their case. Plaintiff, Dionne Caldwell, respectfully requests $1,500 to recompense her for time devoted to serving in a class representative capacity. Although the time directly spent by Ms. Caldwell in the litigation has not been tremendous, she has experienced several aggravating conditions as a result of her involvement in this case. Ms. Caldwell repeatedly met with Class Counsel and provided information and documentation to assist their efforts. A college student at the commencement of this suit, she nonetheless actively participated in the litigation, including being deposed by the Defendant; she is expected to attend the final hearing despite moving out of state. The modest figure of $1,500 is fair, reasonable, typical, and will not diminish the settlement fund for the Class Members.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D.Ohio 1997). "An incentive

award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Berrios v. Sprint Corp.*, 1998 U.S. Dist. LEXIS 22833, *9, 1998 WL 1749828, *3 (S.D.N.Y. 1998). *See also Ingram v. The Coca Cola Co*, 200 FRD 685, 694 (ND Ga. 2001) (stating that such awards are justified since class representatives "take risks, bear hardships and make sacrifices that absent class members do not."). Here, in addition to the efforts described above, Ms. Caldwell rejected an offer from the Defendant to settle on an individual basis in order to continue as the class representative, thereby incurring a very real risk of losing a guaranteed economic benefit.

Furthermore, such compensation promotes the public policy of incentivizing future potential class representatives. *See, e.g., In re Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416 at 422 (W.D.N.Y. 1994) (approving awards to each of the seven class representatives above and beyond their take as class members "in recognition of their efforts on behalf of the subclasses and as incentive for similar efforts in future class actions"). Accordingly, Plaintiff requests that the Court award her the $1,500 for her service.

## IV. CONCLUSION

For the reasons set forth above, the Plaintiff moves the Court for an Order granting final approval of the class action settlement and for allowance of class counsel fees and costs in the aggregate $27,000.00 plus approval of the $1,500.00 award to the class representative.

RESPECTFULLY SUBMITTED this 16th day of November, 2005.

**PLAINTIFF, Dionne Caldwell, individually and on behalf of all others similarly situated,**

By: ____________ s/s Daniel S. Blinn

Daniel S. Blinn, ct02188
dblinn@consumerlawgroup.com
Matthew T. Theriault, ct23077
mtheriault@consumerlawgroup.com
Sarah Poriss, ct24372
sporiss@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd., Suite 512
Rocky Hill, Connecticut 06067
Tel. (860) 571-0408 Fax (860) 571-7457

**CERTIFICATION**

I hereby certify that a copy of the foregoing *Memorandum in Support of the Motion for Final Approval of Class Settlement And For An Award Of Attorneys' Fees And Class Representative's Fees* was mailed via first-class mail, postage prepaid, this 16th day of November, 2005, to all counsel and/or pro se parties of record, as follows:

Jonathan D. Elliot, ct18879
Sabato Pellegrino Fiano, ct05762
Kleban & Samor, PC
2425 Post Road, P.O. Box 763
Southport, CT 06490
Tel. (203) 254-8968 Fax. (203) 259-9617

s/s Daniel S. Blinn
Daniel S. Blinn